ACCEPTED
03-14-00717-CV
3909543
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/27/2015 10:06:49 AM
JEFFREY D. KYLE
CLERK

No. 03-14-00717-CV

IN THE COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/27/2015 10:06:49 AM
JEFFREY D. KYLE
Clerk

**VIVEK GOSWAMI, M.D. AND AUSTIN HEART, PLLC,**

*Appellants*,

**vs.**

**NANCY JO RODRIGUEZ,**

*Appellee*

On Appeal from the 419th Judicial District Court of Travis County, Texas
Trial Court Cause No. D-1-14-GN-000903
The Honorable Gus J. Strauss, Judge Presiding

**BRIEF FOR APPELLEE**

L. Todd Kelly
Texas Bar No. 24035049
The Carlson Law Firm, P.C.
11606  N. IH-35
Austin, Texas 78753
Tel. 512-346-5688
Fax 512-719-4362
Tkelly@carlsonattorneys.com

Counsel for Nancy Jo Rodriguez

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................3

ISSUE PRESENTED.......................................................................................4

STATEMENT OF FACTS ................................................................................4

SUMMARY OF THE ARGUMENT ...................................................................6

ARGUMENT .................................................................................................6

    I. The Trial Court Did Not Abuse its Discretion in Denying
    Defendants' Motion to Dismiss Based on Dr. Breall's Report ......................8

        A. The Trial Court's Decision was Well Within the
        Discretion Afforded it by the Texas Legislature...................................8

        B. The Court Must Look Only at the Facts Provided
        in the Four Corners of Dr. Breall's Report ..........................................9

        C. Dr. Breall's Report Sets Forth a Good-Faith Effort to
        Opine on Each Element of Plaintiff's Claims ....................................12

    II. Even if the Court Determines Dr. Breall's Report is Deficient,
    the Court Should Remand so the Trial Court can Consider
    Granting a 30-day Extension to Cure ...........................................................16

PRAYER ....................................................................................................17

CERTIFICATE OF COMPLIANCE.........................................................................18

CERTIFICATE OF SERVICE ..............................................................................19

# INDEX OF AUTHORITIES

CASE LAW

*Am. Transitional Care Centers of Texas, Inc. v. Palacios*,
46 S.W.3d 737, 878-879 (Tex. 2001) .................................................7, 9, 10, 11, 13

*Bowie Mem. Hosp. v. Wright*, 79 S.W.3d 48, 51-52 (Tex. 2002)....................8, 9, 10

*Hebert v. Hopkins*, 395 S.W.3d 884 (Tex. App.—Austin 2013, no pet.)....... 8, 9, 10

*Hollingsworth v. Springs*, 353 S.W.3d 506, 524 (Tex. App.—Dallas 2011,
pet. denied) .....................................................................................................17

*Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008) ...................................... 16-17

*Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011) .......................................17

*Saudi v. Brieven*, 176 S.W.3d 108 (Tex. App.—Houston [1st Dist.] 2004,
pet. denied)........................................................................................................8

*Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003)................................................9

*Whisenant v. Arnett*, 339 S.W.3d 920, 923 (Tex. App.—Dallas 2011,
no pet.)...........................................................................................................13

RULES AND STATUTES

TEX. CIV. PRAC. REM. CODE § 74.351...........................................................7, 15, 16

TEX. R. APP. P. 38.1..................................................................................................8

**ISSUE PRESENTED**

Whether the trial court abused its discretion in determining that the expert report of Dr. Jeffrey Breall is adequate pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code.

**STATEMENT OF FACTS**

On February 10, 2012, 53-year-old Nancy Jo Rodriguez is sent by her psychiatrist to Seton Northwest Hospital Emergency Center (Seton) for evaluation of confusion. Although Nancy suffers from bipolar disorder and has a history of confusion, she is able live independently at this time (CR 44). While at Seton, Nancy is referred to Vivek Goswami, M.D. (Dr. Goswami), a cardiologist with Austin Heart, PLLC (Austin Heart). Dr. Goswami treats her for atrial fibrillation by placing Nancy on Pradaxa (CR 330). Pradaxa is an anticoagulant, or "blood thinner". Pursuant to the medical records relied on by Dr. Breall, Nancy is discharged home from Seton with instructions to follow-up with David Kessler, M.D. (Dr. Kessler), who also practices with Austin Heart.

Following Nancy's next visit, Dr. Kessler notes that her Pradaxa therapy should be stopped. According to the records upon which Dr. Breall relied in formulating his opinions, a copy of Dr. Kessler's instructions from this visit is sent to Dr. Goswami, Nancy's primary cardiologist. Despite this – and despite having authorized Nancy's Pradaxa for 5 refills – Dr. Goswami takes no action to

4

discontinue Nancy's Pradaxa therapy (CR 330-331). In other words, Dr. Goswami makes no effort to protect his patient, who has a history of confusion and mental illness, from a potentially dangerous drug known to have an array of severe side effects (CR 43-44). Because of Dr. Goswami's omissions, Nancy continues to take Pradaxa over the course of the next 4 months, as prescribed by Dr. Goswami.

On July 2, 2012, Nancy's son and daughter-in-law find Nancy in her apartment, covered in bruises, blood, and feces. Her medical records from Seton Northwest indicate she is admitted to the ICU at Seton and diagnosed with severe coagulopathy, or a severe impairment of her blood's ability to clot. She is treated for gastrointestinal bleeding, hypotension, and kidney injury (CR 44). Only on July 5, 2012 – after 4 months of ignoring his mentally ill patient for whom he has authorized 5 refills of Pradaxa – does Dr. Goswami finally learn, and dictate in Nancy's medical records, that "[s]he had continued to be compliant with Pradaxa." At that point, he ironically notes that "I think it is best to hold her Pradaxa indefinitely."

Nancy is eventually discharged and cared for at Ashwood Assisted Living, an extended-care facility (CR 43). Her discharge summary from Seton Northwest indicates her primary discharge diagnosis is "1. Acute blood loss anemia secondary to acute gastrointestinal bleed secondary to hypercoagulable state while on Pradaxa."

## SUMMARY OF THE ARGUMENT

The trial court's decision to deny Defendants' motion to dismiss based on the expert report of Dr. Breall was well within the discretion afforded it by the Texas Legislature. Dr. Breall's report sets forth the requisite good-faith effort to provide a fair summary of each element of Nancy's claims against Defendants. Furthermore, Dr. Breall sets out the requisite facts upon which he bases his opinions. Because Defendants do not agree with Dr. Breall's opinion, they attempt to make summary judgment-like arguments against Nancy's claims by referencing facts and information *not* contained in Dr. Breall's report. This is not only outside the analysis of whether a Chapter 74 report is adequate, but also an attempt to persuade the appellate court to second-guess the decision of the trial court by introducing evidence that is not properly before the court at this preliminary juncture. Dr. Breall provides the necessary factual background for his opinions in his expert report. Because the trial court had ample grounds to conclude that Dr. Breall's report was sufficient under Chapter 74, the trial court's decision does not constitute an abuse of discretion.

## ARGUMENT

Because this is a case involving permanent, devastating damages resulting from medical neglect, Plaintiff must meet the procedural requirements of Texas Civil Practice and Remedies Code §§ 74.351 – 74.403. One of the procedural

6

hurdles placed before plaintiffs in medical neglect cases is the requirement that the plaintiff provide an expert report and the expert's *curriculum vitae* to the defendant healthcare provider no later than 120 days after the date suit is filed. TEX. CIV. PRAC. REM. CODE 74.351(A). The Texas Supreme Court has ruled that:

> "...the expert report must represent only a good-faith effort to provide a fair summary of the expert's opinions. A report *need not marshal all the plaintiff's proof*, but it must include the expert's opinion on each of the elements identified in the statute. (citing *Hart v. Wright*, 16 S.W.3d 872, 877 (Tex. App.—Fort Worth 2000, pet. denied)). In setting out the expert's opinions on each of those elements the report must provide enough information to fulfill two purposes if it is to constitute a good-faith effort. First, the report must inform the defendant of the specific conduct the plaintiff has called into question. Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit." *Am. Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 737, 878-879 (Tex. 2001) (emphasis added).

Thus, the only requirements of the statute with regard to expert reports are that the report(s) (1) give the defendant notice of what conduct upon which Plaintiff is basing her claim, and (2) give the Court sufficient information to determine that the Plaintiff's claim has merit. *Id.*

Although Defendants initially objected to the report of Dr. Breall based on his alleged lack of qualifications, Defendants have chosen not to pursue this issue on appeal (*See* CR 119-127). As a result, Defendants have waived any argument that Dr. Breall, a board-certified cardiologist with over 20 years of experience, is somehow not qualified to opine on the issues relevant to this case (CR 43). *See*

TEX. R. APP. P. 38.1; *Saudi v. Brieven*, 176 S.W.3d 108 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Thus, Plaintiff will respond only to Defendants' arguments regarding the substantive content of Dr. Breall's expert report.

## I. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING DEFENDANTS' MOTION TO DISMISS BASED ON DR. BREALL'S REPORT.

### A. The Trial Court's Decision was Well Within the Discretion Afforded it by the Texas Legislature.

The trial court's decision to deny Defendants' Motion to Dismiss in this case was well within the broad discretion afforded it by the Texas Legislature. Because the determination of whether an expert report is adequate "has been committed to the trial court's *sound discretion* by the Legislature", a trial court's decision on whether a report is adequate is reviewed only for an abuse of discretion. *Hebert v. Hopkins*, 395 S.W.3d 884 (Tex. App.—Austin 2013, no pet.) (emphasis added). Not only does this review standard serve to "insulate the trial judge's reasonable choice from appellate second guessing", but it permits reversal *only* when the trial court acts without reference to guiding rules and principles when making its decision. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011); *Bowie Mem. Hosp. v. Wright*, 79 S.W.3d 48, 51-52 (Tex. 2002). Because the "dividing line between a sufficient and an inadequate report is impossible to draw precisely", an analysis of that decision under this standard of review "asks not how an appellate court would have resolved that issue, but instead whether the trial court abused its

8

discretion." *Hebert*, 395 S.W.3d 884 at 891. The appellate court "may not substitute its own judgment for the trial court's judgment." *Wright*, 79 S.W.3d at 52. Furthermore, a trial court does not abuse its discretion simply because the reviewing court would have decided an issue differently. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

The trial court's decision to deny Defendants' Motion to Dismiss was well within its discretion and should be affirmed pursuant to the abuse of discretion standard. As demonstrated by the arguments set forth below, the trial court reasonably determined that the expert reports in this case were adequate. In looking only to what is contained within the 4 corners of Dr. Breall's report – as we must in determining the adequacy of a Chapter 74 expert report – Dr. Breall's report provides a sufficient "good faith effort" to opine on each element of Plaintiff's negligence claims. See *Palacios*, 46 S.W.3d at 878. Texas case law has protected trial court decisions on Chapter 74 expert reports from second-guessing by appellate courts, and the judgment of the trial court in this case should not be supplanted on appeal.

**B. The Court Must Look Only at the Facts Provided in the Four Corners of Dr. Breall's Report.**

In his report, Dr. Breall sets forth the facts upon which his opinions are based. When evaluating the adequacy of a Chapter 74 report, a court may consider

*only* the contents of the report. By requiring a report to "stand or fall on the contents within its 'four corners'", a court is precluded from "filling gaps in a report by drawing inferences..." *Palacios*, 46 S.W.3d at 878; *Wright*, 79 S.W.3d at 53. In addition, neither the trial court or the appellate court may "infer additional opinions or underlying facts to fill in gaps that the report itself leaves open." *Hebert*, 395 S.W.3d at 890. As a result, the only facts the trial and appellate courts in this case can consider in evaluating the adequacy of Dr. Breall's report are the facts that are actually provided in his report, as discussed below.

Defendants acknowledge this long-established rule in their Brief, but then proceed to disregard it entirely by basing their arguments regarding the report on information external to its four corners. In an apparent attempt to excuse this disregard for the four-corners rule, Defendants nonsensically accuse Dr. Breall of "concealing" certain information because he did include it in his report. Defendants provide no credible basis for this accusation. Dr. Breall is entitled to formulate his medical opinions based on the facts he deems relevant based on his years of experience and training. Defendants may disagree with the opinions of Dr. Breall and the facts he chose to reference in his report. However, these arguments are not proper objections to a Chapter 74 report, which must be based only on the information provided in the report. Defendants attempt to persuade the court to

"infer additional facts or underlying facts" in direct contradiction to Chapter 74 case law. *Palacios*, 46 S.W.3d at 878.

Defendants are attempting to defend the case on grounds that simply cannot be considered at this threshold stage of the case. They are attempting to litigate issues of the case *beyond* those contained in the expert report in a strained attempt to bolster together a stronger argument and overcome the abuse of discretion standard. Plaintiff's arguments are restricted to the four corners of Dr. Breall's report, and Defendants' arguments must be similarly restricted. Yet, had Dr. Breall made reference to the exact date that Nancy was prescribed Pradaxa and the dates she refilled her **authorized** prescriptions, this information is hardly as unfavorable to Plaintiff's case as Defendant seems to suggest. Even if Dr. Goswami authorized 5 refills of Pradaxa before Dr. Kessler ordered it be discontinued, and before the standard of care required it be discontinued – he did nothing to abide by his duty to his confused, bipolar patient to ensure her Pradaxa therapy was actually discontinued. At the very least, this is an issue that should be resolved by the fact finder rather than in a Motion to Dismiss based on the adequacy of a Chapter 74 expert report.

In his report, Dr. Breall sets forth the relevant facts upon which his opinions are based. In their attempt to disregard these facts and the sufficiency of Dr. Breall's report, Defendants incorrectly allege that Dr. Breall failed to identify the

records he reviewed to support his opinions. In fact, the very first paragraph of Dr.

Breall's expert report states that he:

> "...had the opportunity to review, in detail, all of the materials which you sent to me including Ms. Rodriguez's various in-patient hospital records at Seton Northwest, outpatient cardiology records from Austin Heart, extended care facility records at Ashwood Assited Living, and her outpatient counseling records."

Yet, Defendants disregard these facts entirely and instead allege several times throughout their brief that Dr. Breall failed to state what records he reviewed to reach the opinions in his report.

Dr. Breall then sets forth the additional, *relevant* facts upon which his opinions are based. Nancy suffers from bipolar disorder as well as a history of confusion (CR 44). Dr. Breall explains that Nancy was under the care and treatment of Austin Heart, PLLC and two of its doctors, Dr. David Kessler and Dr. Vivek Goswami. *Id.* Both Dr. Kessler and Dr. Goswami were Nancy's cardiologists, and Dr. Goswami was her primary cardiologist. *Id.* Dr. Kessler orders that Nancy's Pradaxa therapy be stopped. *Id.* However, this order was not "appreciated" by Dr. Goswami, who instead continued to authorize Nancy's Pradaxa refills. *Id.* This is despite the fact that the standard of care required that Pradaxa therapy be stopped. *Id.* Because Defendants failed to discontinue Nancy's Pradaxa therapy, she was hospitalized with hypotension, acute kidney injury, and gastrointestinal bleeding. *Id.* These "known side effects of the over-use of

12

Pradaxa" were attributable to Defendants' failure to discontinue Nancy's Pradaxa therapy, despite the fact it was required by the standard of care and recognized by another doctor at Austin Heart. *Id.* It is clear that Dr. Breall's report provides the facts necessary for him to set forth a good-faith effort to opine on each element of Nancy's claims.

## C. Dr. Breall's Report Sets Forth a Good-Faith Effort to Opine on Each Element of Plaintiff's Claims.

The requirements of Chapter 74 mandate only a good-faith effort to opine on the standard of care, Defendants' breach of that standard, and the causal relationship between Defendants' breach of the standard of care and Nancy's injuries. Plaintiff is not required to marshal all of her proof against Defendants in her expert report. *Palacios*, 46 S.W.3d 873 at 878. An expert report may be "informal and the information presented need not meet the same requirements as evidence offered in summary judgment proceedings or in a trial." *Whisenant v. Arnett*, 339 S.W.3d 920, 923 (Tex. App.—Dallas 2011, no pet.). Dr. Breall's report demonstrates a good-faith effort to set forth his opinion on each element as well as a fair summary of his opinion. In doing so, the report satisfies the requirements of Chapter 74. Dr. Breall's report may be concise and his criticism of Defendants may be plainly stated. However, Defendants cannot credibly claim that they do not understand the conduct upon which Rodriguez's claim is based, and the report

13

provides sufficient insight for the court to conclude her claim is meritorious. His report makes it clear that Dr. Goswami failed to discontinue the administration of this drug to a confused, mentally ill patient after Nancy's follow-up visit to another doctor in Dr. Goswami's same heart group. These are not the types of claims that should tossed out as "frivolous", as Defendants argue.

Dr. Breall's report meets the expert report requirements because it clearly identifies the standard of care applicable to Defendants, the breach of that standard of care, and the causal relationship between the breach and Rodriguez's injuries. Defendants claim that "Dr. Breall completely fails to identify the standard of care". However, Dr. Breall states in his report that the "standard of care would have been to follow the orders of Dr. Kessler to stop the administration of Pradaxa." As he explains, one of Rodriguez's cardiologists, Dr. Kessler, requested that she discontinue Pradaxa therapy. Dr. Breall further provides that the standard of care would have been to follow these directions because the overuse of Pradaxa can result in well-known side effects and injuries such as those eventually suffered by Nancy in this case.

In his report, Dr. Breall clearly delineates the standard of care applicable to Defendants. The effect of overuse of Pradaxa, Dr. Kessler's order to stop its administration to Rodriguez, and Defendants' disregard for Dr. Kessler's request are all set forth in Dr. Breall's report. The report concisely provides a "good faith

14

effort to set forth the standard of care". The report (1) informs defendants of the conduct called into question – the failure to adhere to Dr. Kessler's order to discontinue the drug; and (2) provides a basis for the trial court to conclude the claims have merit by describing the known effects of failing to adhere to discontinue Pradaxa that were eventually suffered by Rodriguez. The expert report more than satisfies the minimum requirements set forth by TEX. CIV. PRAC. & REM. CODE § 74.351.

Next, Dr. Breall opines on Defendants' breach of the standard of care. In his report, Dr. Breall explains that Dr. Goswami failed to adhere to Dr. Kessler's order for Nancy to discontinue Pradaxa, which was required by the standard of care. As a result of this failure, Rodriguez continued to obtain refills of Pradaxa under Dr. Goswami's authorization. Dr. Breall clearly provides that the standard of care was for Pradaxa to be discontinued but that in a clearly delineated breach of that standard, Pradaxa was not discontinued due to the acts or omissions of Dr. Goswami and Austin Heart. The report thus constitutes a good-faith effort to set forth the breach of the applicable standard of care. It does exactly what is required by Chapter 74 – it informs Defendants of the conduct called into question, and provides a meritorious basis for the claims against Defendants.

Defendants further allege that Dr. Breall's report does not adequately address causation. Dr. Breall sets forth recognized side effects of overuse of

Pradaxa, and provides that these side effects were precisely the ones suffered by Rodriguez. Dr. Breall opines that these injuries and Rodriguez's acute admission to the hospital in July were directly caused by Defendants' failure to discontinue her Pradaxa therapy. Dr. Breall provides that Nancy was admitted to the hospital with "acute kidney injury, gastrointestinal bleeding, and hypotension." He provides that these injuries resulted from Defendants' failure to discontinue Pradaxa and therefore act according to the standard of care applicable to them. An expert is not required to delve into a detailed analysis of the nature of a plaintiff's injuries in a Chapter 74 expert report. Rather, an expert is required only to opine on the "causal relationship between that failure and the injury, harm, or damages claimed" – and this is precisely what Dr. Breall has done. TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6).

## II. EVEN IF THE COURT DETERMINES DR. BREALL'S REPORT IS DEFICIENT, THE COURT SHOULD REMAND SO THE TRIAL COURT CAN CONSIDER GRANTING A 30-DAY EXTENSION TO CURE.

Although Plaintiff does not feel that an amendment is necessary for the reasons stated above, if the Court determines Dr. Breall's report is deficient as alleged by Defendants, Plaintiff should be permitted to serve an amended expert report to cure the alleged deficiencies. An appellate court should remand to allow a trial court to consider granting a 30-day extension to amend a deficient report if the trial court concluded the report was adequate. *Leland v. Brandal*, 257 S.W.3d 204,

16

207 (Tex. 2008). This is because the purpose of an expert report requirement is to deter frivolous claims and ***not to dispose of claims regardless of their merits***. *Hollingsworth v. Springs*, 353 S.W.3d 506, 524 (Tex. App.—Dallas 2011, pet. denied). Defendants would certainly prefer to have Nancy's medical neglect claims disposed on Chapter 74 formal requirements rather than the actual merits of this case. However, case law makes it clear that an inadequate report *does not* indicate a claim is frivolous if the alleged deficiencies are readily curable – as they are here. *Id.* Defendants allege Dr. Breall's report is conclusory in that it lacks sufficient facts to support Dr. Breall's opinions. Yet, a 30-day extension is proper even if the report is deficient for these reasons based on the plain language of Chapter 74 and also because the deficiency is readily curable. *See id*; *Leland*, 257 S.W.3d at 207. In the event the Court finds that Dr. Breall's report is deficient, the Court should remand the case to the trial court to permit the trial court to grant a 30-day extension to cure.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellee Nancy Jo Rodriguez respectfully requests that the Court affirm the decision of the trial court denying Appellants' Chapter 74 Motion to Dismiss. Appellee further requests that she be awarded her reasonable attorney's fees and costs as allowed by Chapter 74 of the Texas Civil Practice and Remedies Code. In the event the Court finds Dr. Breall's

17

Report deficient, Appellee prays that the Court remand to allow the trial court to determine whether to grant a 30-day extension to cure the alleged deficiencies. Appellee further prays for such other relief to which she may be justly entitled.

Respectfully submitted,

L. Todd Kelly
Tkelly@carlsonattorneys.com
State Bar No. 24035049
THE CARLSON LAW FIRM, P.C.
11606 N. IH-35
Austin, Texas 78753
(512) 346-5688
(512) 719-4362  (Fax)

/s/ L. Todd Kelly
L. Todd Kelly

**ATTORNEY FOR**
**NANCY JO RODRIGUEZ**

## CERTIFICATE OF COMPLIANCE

I hereby certify that Appelle's Brief contains 3,456 words, based on Microsoft Word's word-count function.

/s/ L. Todd Kelly
L. Todd Kelly

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to the following in accordance with the Texas Rules on the 27th day of January, 2015.

***Electronic Transmission:***
Chris Knudsen
Cknudsen@serpejones.com
America Tower
2929 Allen Parkway, Suite 1600
Houston, Texas 77019
Tel. (713) 452-4400
Fax. (713) 452-4499

Cynthia Day Grimes
Cynthia.Grimes@strasburger.com
Strasburger & Price, LLP
2301 Broadway
San Antonio, Texas 78215

Missy Atwood
Matwood@germer-austin.com
Germer, Beaman & Brown, PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701


/s/ L. Todd Kelly
L. Todd Kelly